UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABORIGINAL IMPORT EXPORT, LTD., and NICHOLAS G. BRUSATORE,<br><br>Plaintiffs,<br><br>v.<br><br>TERRASPHERE SYSTEMS LLC, CONVERTED ORGANICS, INC., WILLIAM A. GILDEA, EDWARD GILDEA, MARK C. GILDEA, and TERRASPHERE, INC.,<br><br>Defendants. | C.A.<br><br><br><br>**JURY TRIAL REQUESTED** |

## COMPLAINT

Plaintiffs Aboriginal Import Export Ltd. and Nicholas G. Brusatore complain against Defendants TerraSphere Systems, LLC, Converted Organics, Inc., William A. Gildea, Mark C. Gildea, Edward Gildea and TerraSphere, Inc. as follows:

## INTRODUCTION

1.      Plaintiffs bring this action for damages caused by a self-interested transaction in which Plaintiffs' multi-million dollar interest in a vertical farming business was rendered worthless. Not only did the individual defendants, each of whom was on both sides of the deal, breach their fiduciary duties and dupe Mr. Brusatore into agreeing to the transaction through misrepresentations and material omissions, they included as a term of the deal an overbroad and unfair five-year restrictive covenant, purportedly barring Mr. Brusatore from earning his livelihood in the industry. In addition to

monetary damages suffered as a result of a breach of fiduciary duty, Plaintiffs seek a declaration that the restrictive covenants are null and void and of no force or effect.

## PARTIES

2.      Aboriginal Import Export Ltd. ("AIE") is a holding company with a principal place of business in Vancouver, British Columbia.

3.      Nicholas G. Brusatore is an individual residing in Vancouver, British Columbia. Brusatore is the founder and the principal owner of AIE. Through AIE, Brustore owned approximately 13.5% of the membership interest in Defendant TerraSphere Systems, LLC. After the challenged transaction, Mr. Brusatore became a shareholder of Converted Organics, Inc.

4.      Defendant TerraSphere Systems, LLC ("TerraSphere") is a Massachusetts limited liability company with a principal place of business in Boston, Massachusetts.

5.      Defendant Converted Organics, Inc. ("COIN") is a Delaware corporation with a principal place of business in Boston, Massachusettts. In November 2010, COIN, through its wholly owned subsidiary, Defendant TerraSphere, Inc., acquired 95% of the membership interest in TerraSphere.

6.      Defendant TerraSphere, Inc. is a Delaware corporation with a principal place of business in Boston, Massachusetts.

7.      Defendant Mark C. Gildea ("Mark") is an individual residing in Bridgewater, Massachusetts, Masschusetts. Mark is the former President and Chief Executive Officer of TerraSphere.

8.      William A. Gildea ("Bill") is an individual residing in Cohasset, Massachusetts. Bill is a co-founder and managing member of TerraSphere.

9.     Defendant Edward J. Gildea ("Edward") is an individual residing in Peabody, Massachusetts. Edward is also a former owner of TerraSphere. Edward is, and at all relevant times was, the President, CEO and Chairman of the Board of COIN.

10.     Mark, Bill and Edward are brothers. They will be referred to, collectively, as the Gildea Defendants.

## JURISDICTION AND VENUE

11.     There is complete diversity among the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12.     Venue is appropriate in this District because one or more of the Defendants resides or is headquartered in Massachusetts.

## FACTS

13.     Brusatore is an entrepreneur and inventor who has worked in the vertical farming industry for years. Vertical farming is the process of growing plants vertically to produce many times more plants per square foot of growing space than traditional farming.

14.     In or about 2002, Brusatore and Bill Gildea founded TerraSphere, a company which designs, builds and operates vertical farming systems for growing pesticide-free organic fruits and vegetables.

15.     Brustore designed and built all of the machines for TerraSphere, and also designed and developed TerraSphere's proprietary clean technology. The proprietary technology is designed to promote the sustainable consumption of natural resources by accelerating plant production and maximizing crop yields, while improving

environmental footprints through the reduction of carbon emissions and fuel use associated with traditional crop production and distribution.

16.     TerraSphere generated revenues by licensing its technology to customers in the vertical farming industry.

17.     The Gildea Defendants have been affiliated with TerraSphere in one capacity or another since TerraSphere's inception.  Bill co-founded the company with Brusatore and at all relevant times was managing member of the company.  Edward, Bill and their other brother, Sean Gildea,  owned approximately 57% of the membership interest of the company prior to the COIN merger.  Mark is and was TerraSphere's President and CEO.

18.     Through AIE, at the time of the COIN merger, Brusatore owned approximately 13.5% of the membership interest in TerraSphere and performed various functions for the company.

19.     COIN operates processing facilities that use food waste and other raw materials to manufacture all-natural fertilizer and soil amendment products combining nutritional and disease suppression characteristics.  As of 2010, COIN operated two facilities, one in California and the other in New Jersey.

20.     COIN is a publicly traded company that formerly was traded on the NASDAQ exchange.  In late 2009, however, its share price dropped below $1.00 for more than 30 consecutive days, and it was later de-listed from NASDAQ.  Since that time, COIN's stock has been traded on the Over-the-Counter Market (OTC).  It now trades for a fraction of a penny per share, rendering the consideration to the Plaintiffs in the merger transaction all but worthless.

21.     In or about March 2010, , the Gildeas began exploring the possibility of COIN acquiring TerraSphere.

22.     For the quarter ending March 31, 2010, TerraSphere had operating revenues of almost 1.7 million, and a gross profit of $980,000.  Although TerraSphere was a young company, it was showing signs of growth and its financial condition was improving.

23.     Notably, at approximately the same time that the Gildeas and COIN began exploring the acquisition of Terrasphere, Terrasphere secured exclusive licensing agreements providing it with a stream of revenue in the amount of $3.8 million over the subsequent 12 months.  Upon information and belief, COIN needed this revenue stream to prop up its failing business whereas TerraSphere, but for the transaction with COIN, was on the path to success.

24.     At the time of the deal between COIN and TerraSphere, the Gildea brothers had mismanaged both companies badly.  COIN was in internal disarray and unable to raise any capital as a result.  Although TerraSphere had strong operational promise and had recently secured significant licensing business wins, the Gildeas were not competent to raise outside capital to grow the business.

25.     Upon information and belief, the Gildeas conceived of the COIN-TerraSphere transaction as a way to help each other by closing a deal that they could use to prop up COIN's stock price and create cash flow for COIN.

26.     Bill Gildea, TerraSphere's managing member, assumed primary responsibility for negotiating the terms of the sale to COIN.  His counterpart at COIN was his brother, Edward.

27. The Gildeas negotiated the transaction for their own purposes and for their own benefit. At all materials times, Bill failed to protect the interests of the other owners of TerrraSphere and failed to inform them of all material information concerning the deal.

28. Together, the Gildea brothers owned 57% of the membership interest in TerraSphere and Edward Gildea was the single largest non institutional shareholder of COIN common stock, holding 898,970 common shares. After the TerraSphere transaction, Edward Gildea became the single largest shareholder of COIN common stock with approximately 3.4 million common shares.

29. Bill and Edward Gildea controlled all aspects of the deal between TerraSphere and COIN, including the disclosures to the TerraSphere members.

30. Edward Gildea, as a co-owner in a closely held company, breached his fiduciary duties to Mr. Brusatore by, among other things, failing to inform Mr. Brusatore fully and fairly about the terms of the deal.

31. In his role as managing member of TerraSphere and as a co-owner in a closely held company, Bill Gildea , breached his fiduciary duties to Mr. Brusatore by, among other things, failing to inform Mr. Brusatore fully and fairly about the terms of the deal. In fact, Bill Gildea affirmatively refused to provide information to Mr. Brusatore about the transaction and to this day has failed and refused to provide to Mr. Brusatore complete signed copies of the transaction documents.

32. Mr. Brusatore reasonably relied upon the Gildeas to provide him with all material information necessary to decide how to vote on the COIN-TerraSphere transaction.

33.     Mr. Brusatore had the right to refuse to assent to the transaction and invoke his right to appraisal of his membership interest under M.G.L. ch. 156C, §§ 59-63. If fully informed, Mr. Brusatore would have invoked his rights.

34.     Upon information and belief, the Gildeas knowingly and intentionally mislead Mr. Brusatore in order to secure his assent to the transaction and, among other things, avoid his exercise of appraisal rights.

35.     Upon information and belief, Mr. Brusatore's continued involvement with TerraSphere and, after the proposed merger, with COIN, was also critical to the Gildea's plan to use the TerraSphere acquisition to prop up the failing COIN stock price.  The Gildeas needed to be able to announce to the market that Mr. Brusatore had approved the transaction and would be joining COIN in connection with the acquisition. As a result, Brusatore's approval of the sale of TerraSphere was critical to the Gildeas, given his role as a founder of the company, his status as a 13.5% owner, his role in the development of TerraSphere's proprietary technologies, and his high profile in the industry.

36.     Accordingly, COIN, through Edward Gildea and several other individuals acting on its behalf, communicated with Brusatore on several different occasions in an effort to convince Brustore to agree to proceed with a sale of the company.  Additionally, Bill Gildea similarly tried to persuade Brusatore to agree to their deal to sell TerraSphere to COIN.

37.     To induce Brusatore to approve the proposed deal, Bill Gildea promised Brusatore that if he approved the sale of TerraSphere, COIN would raise approximately $19,000,000 to fund TerraSphere's operations.

38.     On information and belief, Bill Gildea knew that nowhere close to this amount would be available to COIN.  Additionally, Bill Gildea knew at the time that COIN needed to raise significant funds to survive and that any monies raised by COIN subsequent to the sale of TerraSphere would not be used to fund TerraSphere's operations.

39.     Bill Gildea, who was responsible for TerraSphere's financial condition and had exclusive control of the negotiations with COIN, represented to Brusatore that selling the company to COIN was the only means to obtain funding for TerraSphere's operations.  On information and belief, Bill Gildea never effectively pursued any funding option for TerraSphere other than the sale to COIN.

40.     Additionally, also in or about June 2010, Bill Gildea and David Allen, COIN Chief Financial Officer, misrepresented to Mr. Brusatore that two other segments of COIN's business (waste and fertilizer) were profitable and that COIN did not need to purchase TerraSphere to survive.

41.     Bill Gildea also represented to Brusatore that the sale of TerraSphere would benefit him because TerraSphere would be able to commit to a guaranteed three-year services contract with AIE pursuant to which AIE would receive $200,000 per year.

42.     On or about July 1, 2010, in an effort to persuade Brusatore to go along with the deal, TerraSphere, acting through Mark Gildea, presented a three-year Engagement Agreement to AIE, pursuant to which the company agreed to pay AIE approximately $200,000 per year for three years.   The Engagement Agreement prohibited either party from amending the agreement without the other's consent.

43.     Ultimately, Brusatore, relying on these assurances and misrepresentations by the Gildea Defendants, agreed to approve the merger and sell his interest in TerraSphere to COIN.

44.     By Membership Interest Purchase Agreement dated July 6, 2010 ("Purchase Agreement"), COIN agreed to acquire up to 100% of the membership interest in TerraSphere through TerraSphere, Inc. ("TSI"), a wholly owned subsidiary formed by COIN for purposes of the transaction.

45.     The terms of the Purchase Agreement were remarkably one-sided (in COIN's favor) and contrary to the interests of TerraSphere's members.  By agreeing to such terms, Bill and Ed Gildea breached their fiduciary duty to TerraSphere and its members.

46.     Pursuant to the Purchase Agreement, COIN (through TSI) agreed to purchase 100% of the membership interest in TerraSphere, in exchange for shares of stock of COIN.  The Purchase Agreement contained a two-pronged formula to determine the amount of shares that would be issued to each TerraSphere owner.   One prong of the formula was based on a $21,000,000 valuation of TerraSphere.  The other prong was based on a $28,000,000 valuation of TerraSphere.

47.     The selling TerraSphere members had the option to select either formula. The higher valuation formula restricted the sale of COIN stock for a period of eighteen months.  The lower valuation included a six-month lock-up period.

48.     Upon information and belief, no valuation of the deal from the perspective of TerraSphere was ever performed.   TerraSphere never obtained a fairness opinion or any independent financial advice.  By failing to secure proper financial advice for

TerraSphere, Bill and Ed Gildea breached their fiduciary duty to TerraSphere and its members.

49.     The Purchase Agreement, in addition to containing a formula to calculate the number of shares to be issued to the sellers, also provided that the shares would be issued over time, in tranches, with additional shares issued if COIN achieved certain profit benchmarks.  To date, COIN has not achieved any of the profit targets.

50.     The COIN share price dropped precipitously before and after the closing date for the Merger, but there were no provisions to adjust the compensation to TerraSphere in the event of such a loss in share price.  The Gildeas breached their fiduciary duty to the TerraSphere members by failing to negotiate any such protection in the deal.

51.     In addition, the Purchase Agreement included a *five-year* restrictive covenant, which purports to prohibit any controlling seller (which includes Brusatore) from competing with COIN, or any successor entity.   The Gildeas breached their fiduciary duty to Mr. Brusatore by locking him into such an unfair and overbroad restrictive covenant without adequate consideration or deal protections.

52.     Soon after the Purchase Agreement was executed, it became clear that the Gildea Defendants had scammed Brusatore (and other TerraSphere members).

53.     Contrary to the Gildea Defendants' representations, COIN was in dire financial straits at the time the Agreement was signed.  COIN's two other businesses (waste water and fertilizer), contrary to prior representations, were not profitable and could not sustain the company.

54.     Instead of raising $19,000,000 to fund TerraSphere's operations, COIN was able to raise only $3.7 million, and allocated approximately 50% of such funds to non-TerraSphere operations.  Additionally, COIN raised these funds through the issuance of convertible notes and warrants which diluted the former TerraSphere owners' interest in COIN, in violation of the anti-dilution provision in the Purchase Agreement.

55.     Bill and Ed Gildea both knew or should have known, when they represented to Brusatore that COIN would raise $19,000,000 to fund TerraSphere's operations, that they would not be able to raise anywhere close to this amount of money, but made such representation to persuade Brusatore to go along with the deal.

56.     COIN also failed to issue shares of stock pursuant to the Purchase Agreement.  Per the Purchase Agreement, COIN was required to issue $12,000,000 in COIN stock to the TerraSphere members at the Closing, which occurred on or about November 12, 2010.  It only issued $7,000,000 in stock, and to this day has not issued any additional shares as required by the Purchase Agreement.

57.     TerraSphere also unilaterally reduced payments to AIE under the Engagement Agreement, despite an obligation not do so.

58.     On information and belief, COIN had no intention of fulfilling its obligations under the Purchase Agreement at the time it executed same.

59.     On information and belief, TerraSphere had no intention of performing its obligations under the Engagement Agreement at the time it executed same.

60.     The Gildea Defendants orchestrated the transactions in order to protect and promote their own interest in COIN.  They tried unsuccessfully to use the TerraSphere acquisition to prop up the value of COIN.

61.     Prior to July 2010, AIE owned a 13.5% interest in TerraSphere, which owned proprietary technology and had a positive net cash flow.  Within eighteen months, AIE owned shares of COIN stock worth next to nothing.

62.     Despite repeated demands by Mr. Brusatore, to this day the Defendants have never even provided him with copies of the final executed transaction documents for the COIN-TerraSphere merger.  Upon information and belief, based upon the general disarray of the management of both companies both before and after the merger, the Defendants have never fully and properly completed the merger documentation.

## COUNT I – BREACH OF FIDUCIARY DUTY
### (v.  the Gildeas)

63.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

64.     At the time of the challenged merger, Edward Gildea owned 8.75% of TerraSphere and owed Mr. Brusatore a fiduciary duty as a co-venturer in a closely held company.

65.     At the time of the challenged merger, Bill Gildea was the managing member of TerraSphere and held a substantial membership interest in TerraSphere, and owed Mr. Brusatore a fiduciary duty as a co-venturer in a closely held company and as its managing member.

66.     At the time of the challenged merger, Mark Gildea was the President and Chief Executive Officer of TerraSphere and also held a substantial membership interest in TerraSphere, and owed Mr. Brusatore a fiduciary duty as well.

67.     The Gildeas' conduct as described herein was grossly negligent, reckless and/or intentional and fraudulent misconduct and a knowing violation of the law.

68.     The Gildeas breached their fiduciary duties by engaging in the conduct described herein.

69.     Through their fraud, self-dealing and gross mismanagement of both companies, the Gildea Defendants have wasted and destroyed the value of both TerraSphere and COIN, such that they should be held liable to AIE and Mr. Brusatore for the full amount of their losses.

70.     As a result of the breach, AIE and Mr. Brusatore suffered damages in an amount to be determined at trial.

## COUNT II—FRAUD IN THE INDUCEMENT
### (v. the Gildea Defendants)

71.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

72.     As described herein, each of the Gildea Defendants knowingly made false representations to Brusatore and AIE for the purpose of persuading him to sell his interests in TerraSphere to COIN.

73.     Each of the Gildea Defendants, as co-owners and/or officers of TerraSphere, had an obligation to speak truthfully to Brusatore and AIE in conjunction with the proposed transaction.

74.     Brusatore and AIE relied on each of the Gildea Defendants' false statements in deciding to sell his TerraSphere interest to COIN.

75.     Brusatore and AIE suffered damages and are entitled to a money judgment sufficient to compensate them for their losses, and are further entitled to the declaratory relief set forth in Count IV below.

## COUNT III – RESCISSION

76.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

77.     The COIN-Terrasphere transaction was the product of fraud and breach of fiduciary duty, and should be declared void and rescinded.

78.     In the absence of the delivery of full documentation to Mr. Brusatore of fully executed documents to complete the merger, the COIN-TerraSphere merger should be declared void and rescinded.

79.     This Court has the power in equity to rescind the transaction and return Terrasphere to its independent status.

80.     This Court should exercise its equitable powers to rescind the COIN-Terrasphere transaction or, in the alternative, to award AIE and/or Mr. Brusatore resiscionnary damages in an amount equal to the full value of his membership interest in TerrasSphere at the time of the merger, together with interest..

## COUNT IV—DECLARATORY JUDGMENT
### (v. all Defendants)

81.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

82.     The restrictive covenants set forth in the Purchase Agreement should be deemed null and void on account of the Gildea Defendants' fraudulent conduct, breach of fiduciary duty, and inequitable conduct and in light of COIN's breach of the Purchase Agreement.

83.     In the alternative, the scope of the restrictive covenants is unreasonable and should be narrowed to no longer than one year from November 12. 2010, the date on which COIN breached the Purchase Agreement by failing to issue the appropriate number of shares.

84.     An actual controversy exists concerning the validity of the restrictive covenants.

85.     Plaintiffs are entitled to a declaration from this Court that the restrictive covenants, insofar as they pertain to Brusatore's right to compete with COIN and TerraSphere, are void and unenforceable.

## COUNT V—BOOKS AND RECORDS
### (v. TerraSphere and COIN)

86.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

87.     As a member of TerraSphere prior to the challenged transaction and as a shareholder of COIN after the challenged transaction, PlaintiffsAIE has a right to documents, information and access to the books and records of TerraSphere and COIN.

88.     Despite repeated oral and written demand, Terrasphere and COIN have refused to provide lawful access to their books and records.

89.     This Court should order TerraSphere and COIN to provide immediately to AIE and Mr. Brusatore:

  a.    true and full information regarding the status of the business and financial condition of both companies;

  b.    copies of their tax returns for the past 5 years;

  c.    a current list of the name and last known business, residence or mailing address of each member and manager;

  d.    a copy of any written limited liability company agreement and certificate of formation and all amendments thereto, together with executed copies of any written powers of attorney pursuant to which the limited liability company agreement and any certificate and all amendments thereto have been executed;

e.  true and full information regarding the amount of cash and a description

and statement of the agreed value of any other property or services

contributed by each member and which each member has agreed to

contribute in the future, and the date on which each became a member;

and

such other information regarding the affairs of the companies as is just and reasonable.

## COUNT VI—MGL 93A
### (v. All Defendants)

90.   Plaintiffs repeat the foregoing allegations as if fully set forth herein.

91.   Defendants' conduct as described herein violates M.G.L. ch. 93A, the

Massachusetts unfair trade practices statute.

92.   Defendants' conduct as described herein was knowing and willful.

This Court should award Plaintiffs treble damages, attorneys' fees and costs for

violation of M.G.L. ch. 93A by Defendants.

WHEREFORE, Plaintiffs respectfully request:

(1)   judgment in their favor in an amount to be determined at trial;

(2)   judgment on Count IV declaring that any and all restrictive covenants set

forth in the Purchase Agreement are null and void and of no force or

effect;

(3)   an award of treble damages, attorney's fees and costs;

(4)   and such other and further relief as the Court deems just.

## JURY DEMAND

**Plaintiffs demand a trial by jury on all counts so triable.**

ABORIGINAL IMPORT EXPORT, LTD.,
and NICHOLAS G. BRUSATORE,

By their attorneys,


  /s/ David B. Mack
Sean T. Carnathan (BBO #636889)
scarnathan@ocmlaw.net
David B. Mack (BBO #631108)
dmack@ocmlaw.net
Benjamin Kafka (BBO #640993)
bkafka@ocmlaw.net
O'CONNOR CARNATHAN
AND MACK LLC
1 Van de Graaff Drive
Suite 104
Burlington, MA  01803
Telephone: (781) 359-9000
Dated: January 24, 2012                    Facsimile: (781) 359-9001